# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Zavian Rolando Valdez AND ZZ Tech, LLC §<br>§<br>   Plaintiffs, §<br>§<br>§<br>v. §<br>§<br>Stephen Bulboff AND Coleman Hanna §<br>Carwash Systems, LLC §<br>§<br>   Defendants. §<br>§<br>§ | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Zavian Rolando Valdez and ZZ Tech, LLC file this Complaint for unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), breach of fiduciary duty, fraud, conversion, common law trademark infringement, civil conspiracy, and unjust enrichment against Defendants Stephen Bulboff and Coleman Hanna Carwash Systems, LLC and alleges as follows:

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 4

II.   PARTIES ........................................................................................................................... 5

III.  JURISDICTION AND VENUE ....................................................................................... 5

IV.   FACTS .............................................................................................................................. 6

      Valdez is a Young Innovator ............................................................................................ 7

      Bulboff is an Experienced Businessman ........................................................................... 7

      Valdez and Bulboff Form a Partnership ........................................................................... 8

      Valdez Invents a Novel Conveyor System ...................................................................... 10

      Valdez's Invention is Positively Received by Leaders in the Carwash Industry ............... 11

      Bulboff Files the Applications, Falsely Claiming to be the Sole Inventor .......................... 13

      Bulboff Advertises the Invention as His Own .................................................................. 14

      Bulboff and Coleman Hanna Conspired to Usurp and Monetize Valdez's Invention ......... 16

      Valdez Files a Patent Application to Protect His Invention ................................................ 18

V.    CLAIMS ......................................................................................................................... 18

      Count I – Unfair Competition and False Designation of Origin under § 43 of the Lanham Act, 15
      U.S.C. § 1125(a) ............................................................................................................ 18

      Count II – Breach of Fiduciary Duty ............................................................................... 19

      Count III – Fraud ............................................................................................................ 20

      Count IV – Conversion .................................................................................................... 22

      Count V– Common Law Trademark Infringement ........................................................... 23

      Count VI – Civil Conspiracy ........................................................................................... 24

      Count VII – Unjust Enrichment ....................................................................................... 24

      Count VIII – Unjust Enrichment ...................................................................................... 26

      Count IX – Exceptional Case ........................................................................................... 27

VI.   JURY DEMAND ............................................................................................................ 27

VII.  PRAYER FOR RELIEF ................................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

*Fiers v. Revel,* 984 F.2d 1164, 1168, 25 USPQ2d 1601, 1604-05 (Fed. Cir. 1993) ..................... 13

**Statutes**

15 U.S.C. § 1117 ............................................................................................................ 27, 29
15 U.S.C. § 1125(a) ................................................................................................................ 18
15 U.S.C. 1051 et seq. .............................................................................................................. 5
28 U.S.C. § 1331 and § 1338 .................................................................................................... 6
28 U.S.C. § 1331 and § 1338(a) ............................................................................................... 5
28 U.S.C. § 1367 ....................................................................................................................... 6
28 U.S.C. § 1391(c) .................................................................................................................. 6
35 U.S.C. § 115 ....................................................................................................................... 13
35 U.S.C. § 285 ................................................................................................................. 27, 31

## I.     __INTRODUCTION__

1.     This case involves the blatant theft of Valdez's innovative and valuable invention.

2.     Zavian Valdez is a passionate and driven young innovator with a desire to improve the carwash industry. Valdez's career began at the age of thirteen when he got his first job at a local carwash. Initially tasked with washing cars, Valdez's curiosity soon led him to study the equipment and systems used in carwashes. Over time, Valdez took on additional responsibilities, learning how to fix and maintain complex carwash equipment. Valdez's growing fascination with carwash machinery fueled his desire to find innovative ways to improve its performance and efficiency. Valdez has continued working in the carwash industry for nearly ten years, honing his skills and knowledge, with a clear vision of revolutionizing the industry through improved equipment and systems.

3.     Defendant Bulboff is a seasoned businessman with multiple carwash locations in Florida and New Jersey. With significant resources, years of experience, and a vast network of contacts in the carwash industry, Bulboff is well-positioned to exploit an inexperienced young inventor trying to break into the industry.

4.     After meeting Valdez and uncovering Valdez's creativity, Bulboff induced Valdez to disclose his inventive concepts and exercise his technical skills under the pretense of a partnership to invent a novel and valuable carwash conveyor system (the "Invention"). The Invention features an improved track capable of handling oversized vehicles weighing substantially more than passenger cars and trucks. Valdez and Bulboff were in regular contact for years while Valdez built his Invention at Bulboff's Florida carwash. Unsurprisingly, the Invention garnered attention from leaders in the carwash industry, resulting in numerous purchase inquiries. After extracting Valdez's inventive concepts and realizing the value of the Invention, Bulboff decided to steal the Invention for his own reputational and financial benefit. Bulboff proudly and publicly claimed

**COMPLAINT**                          Page **4** of **32**

Valdez's Invention as his own, and secretly filed U.S. Patent Application No. 18,901,486 and International Patent Application No. PCT/US2024/049189 (the "Applications"), listing himself as the sole inventor. After years of supporting Valdez's efforts, Bulboff abruptly and without explanation cut off all communication with Valdez and unreasonably withheld possession of Valdez's personal and intellectual property.

5.    Upon information and belief, Bulboff conspired with Coleman Hanna to commercialize, manufacture, and sell the Invention without Valdez, and tarnish Valdez's reputation in the carwash industry.

## II.    **PARTIES**

6.    Plaintiff Zavian Valdez is a citizen of the State of Florida.

7.    Plaintiff ZZ Tech, LLC, is a Texas limited liability company with its principal office at 20311 Harbor Springs Lane, Spring, Texas 77379. ZZ Tech is in the business of developing and commercializing innovative technologies. Valdez assigned his rights in the Invention to ZZ Tech in November 2024.

8.    Defendant Stephen Bulboff is a citizen of the State of Florida. Bulboff resides at 10070 Gibsonton Drive, Riverview, Florida 33579.

9.    Defendant Coleman Hanna is a Texas limited liability company with its principal office at 5842 W. 34th Street, Houston, Texas 77092. Coleman Hanna is in the business of manufacturing carwash equipment, including carwash conveyor systems. Coleman Hanna distributes and sells carwash equipment throughout the United States, including in this District.

## III.    **JURISDICTION AND VENUE**

10.   This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051 et seq.  The Court therefore has subject-matter jurisdiction over the claims raised in this action under 28 U.S.C. § 1331 and § 1338(a).

11.   This Court has jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the claims over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338 that they form part of the same case or controversy under Article III of the United States Constitution.

12.   This Court has personal jurisdiction over Stephen Bulboff because Bulboff has purposefully availed himself of Texas through his close contacts with Texas-based Coleman Hanna and by regularly and continuously transacting and conducting business in the State of Texas. On information and belief, Bulboff has entered agreements with Coleman Hanna involving the Invention. In addition, Defendant has infringed on Valdez's rights under the Lanham Act in the State of Texas by advertising Valdez's Invention as his own.

13.   This Court has personal jurisdiction over Coleman Hanna because, among other things, Coleman Hanna resides in Texas and Coleman Hanna's products have been and continue to be sold within this District. In addition or in the alternative, Coleman Hanna has placed its products into the stream of commerce, knowing that some of such products would be sold in this District.

14.   Venue in this District is proper under 28 U.S.C. § 1391(c) because the Defendants are subject to personal jurisdiction in this District.

## IV.  FACTS

15.    Valdez is the inventor of the invention claimed in United States Patent Application No. 18/901,486 and International Patent Application No. US2024/049189. The Applications, filed by Bulboff, disclose a vehicle wash system with a belt conveyor. Upon information and belief, the Applications disclose the novel conveyor system invented by Valdez. However, the Applications do not list Valdez as the inventor, and instead list Bulboff as the sole inventor.

**Valdez is a Young Innovator**

16.     Valdez is a talented and hardworking young innovator with a passion for creating unique solutions to longstanding problems. Valdez's interest in carwash equipment began at the age of thirteen when he got his first job at a local carwash. After learning how to fix and maintain complex carwash machinery, Valdez developed a desire to improve the performance and efficiency of carwash equipment. Valdez has continuously worked at carwashes for the last nine years, gaining valuable expertise and insight with a clear vision of transforming the carwash industry through innovative carwash equipment and systems.

17.     After years of working at carwashes, Valdez identified two major issues in the industry—automatic carwash conveyor systems frequently broke down and were unable to support heavier vehicles. Valdez recognized that the constant need for repairs was costing carwashes significant amounts of time and money. Valdez also identified a gap in the market for automatic carwashes that could accommodate larger vehicles like delivery trucks, motorhomes, and semi-trucks. In response, Valdez began developing innovative solutions to address durability and load capacity issues associated with conventional conveyor systems.

**Bulboff is an Experienced Businessman**

18.     Bulboff is a seasoned businessman with extensive knowledge and experiences in the carwash industry. Bulboff owns and operates several successful carwashes in New Jersey and Florida, including Florida Super Wash. Bulboff is also the President of Shammy@Shine, Inc., a Florida for profit corporation, and Shamm@Shine, Inc., a New Jersey for profit corporation. Bulboff was also previously the registered agent for Hanna Acceptance Corporation of New Jersey, a carwash financing company. After years of attending carwash trade shows and networking with others in the industry, Bulboff has become a well-connected figure within the field.

**COMPLAINT**            Page **7** of **32**

19.     Bulboff's financial resources, years of experience, and business acumen make Bulboff a valuable mentor and strategic partner for a young innovator trying to break into the carwash industry. These same characteristics, however, also enable Bulboff to exploit an inexperienced entrepreneur.

**Valdez and Bulboff Form a Partnership**

20.     On or about July 15, 2022, Valdez came across Bulboff's Florida Super Wash and stopped to wash his car. As Valdez washed his car, it became apparent that some of the carwash equipment was not functioning properly. Bulboff, noticing the malfunction, approached the stall to address the problem and unsuccessfully attempted to remedy the issue. Valdez, with his extensive technical knowledge of carwash machinery, offered to help and quickly repaired the equipment.

21.     Valdez and Bulboff then discussed conventional carwash conveyor systems and their limitations. For example, Valdez and Bulboff discussed common carwash equipment malfunctions and maintenance requirements. Valdez expressed that it could be possible to improve the conventional conveyor system to overcome these limitations.

22.     Recognizing Valdez's exceptional skill and knowledge, Bulboff saw an opportunity to leverage Valdez's expertise for his own benefit. Bulboff, emphasizing his resources and experience in the carwash industry, proposed that Valdez utilize his expertise at Florida Super Wash to repair equipment and continue developing his improved conveyor system. Bulboff expressed a desire to provide Valdez with the resources required to build a novel conveyor system.

23.     For the next two years, Valdez maintained and repaired Bulboff's carwash equipment, frequently using Valdez's own funds to procure replacement equipment based on Bulboff's explicit promises to reimburse Valdez. At the same time, Valdez built prototypes of his improved conveyor system at Bulboff's Florida Super Wash. While Valdez conceived of and

implemented each idea, Bulboff furnished the necessary parts and equipment for Valdez to develop the prototypes. Valdez and Bulboff repeatedly discussed developing a commercial product and working together to sell the product. In addition, Valdez and Bulboff each expressed a desire to profit from the invention, and were confident that their combined contributions—Valdez's Invention with Bulboff's resources—would be the basis for a long-term profitable business partnership.

24.     During their partnership, Bulboff made repeated assurances that Valdez would realize the fruits of his efforts. Bulboff often spoke of their future success as partners, making statements like "we are so close to stardom". Bulboff repeatedly assured Valdez that he would be "taken care of" and would become an executive at Shammy@Shine, Inc. Bulboff fostered a close relationship with Valdez, often referring to Valdez as his son.






**Valdez Invents a Novel Conveyor System**

25.     On or about July 2022, Valdez began working at Bulboff's Florida Super Wash maintaining and repairing Bulboff's carwash equipment. At the same time, Valdez began implementing his ideas to address each of the limitations associated with conventional carwash conveyor systems. For example, Valdez improved the durability and load capacity of the conveyor belt by changing the material, increasing the grabbing force of the rollers, and preventing lateral shifting of the belt.

26.     For the next two years, Valdez built prototypes of his improved conveyor system at Bulboff's Florida Super Wash. Valdez conceived of and provided each and every inventive concept. Bulboff furnished the location, as well as the necessary parts, equipment, and labor for Valdez to develop the prototypes.

27.     During this time, Valdez and Bulboff frequently discussed Valdez's ideas and Bulboff often observed Valdez constructing the prototypes. Bulboff frequently advised Valdez to maintain the secrecy of his developments—strongly discouraging Valdez from speaking with others in the industry and deleting Valdez's photographs of his prototypes under the guise of maintaining secrecy for patentability and the partnership's market advantage.

28.    Through several years of trial and error, Valdez finally developed a novel conveyor system featuring a simplified design, improved durability, and increased load capacity. Each inventive concept of the Invention was conceived solely by Valdez.

 

**Valdez's Invention is Positively Received by Leaders in the Carwash Industry**

29.    On or about October 2023, Valdez began advertising an improved automatic carwash that could accommodate larger vehicles. Valdez received a great deal of positive feedback as owners of larger vehicles expressed their enthusiasm for an automatic carwash they could use. Valdez's Invention also garnered significant attention from carwash manufacturers and owners. Major carwash equipment manufacturers and owners began traveling to Bulboff's Florida Super Wash to observe Valdez's Invention in operation, and many expressed interest in incorporating Valdez's Invention into their businesses.

 

30.    In 2024, Valdez and Bulboff began attending trade shows to showcase an embodiment of Valdez's Invention. On or about May 2024, Valdez and Bulboff attended the Car Wash Show, an annual carwash convention in Nashville, Tennessee. Coleman Hanna, an international car wash equipment manufacturer, was among the many carwash equipment manufacturers that expressed interest in Valdez's Invention during the convention. In fact, Coleman Hanna executives traveled to Bulboff's carwash on several occasions to observe Valdez's Invention in operation.

 

31.    On or about October 2024, Valdez and Bulboff attended the Northeast Regional Carwash Convention (NRCC) in Atlantic City, New Jersey, as representatives of Coleman Hanna and presented Valdez's Invention to leaders in the industry. During the NRCC, it became apparent

that many car wash manufacturers and owners were interested in Valdez's Invention. For example, a major carwash company with over 150 locations nationwide expressed interest in installing Valdez's Invention at their carwashes.

32.    Meanwhile, Bulboff, aware of his plan to steal Valdez's Invention, repeatedly undermined Valdez at the NRCC by claiming that Valdez had no knowledge of the Invention and that interested parties should speak to Bulboff.

 

**Bulboff Files the Applications, Falsely Claiming to be the Sole Inventor**

33.    On or about September 2024, Bulboff, through counsel, filed the Applications for Valdez's Invention. Each of the Applications lists Bulboff as the sole inventor and does not list Valdez as the inventor.

34.    To be an inventor, one must have conceived of the invention. Unless a person contributes to the conception of the invention, he is not an inventor. *See Fiers v. Revel,* 984 F.2d 1164, 1168, 25 USPQ2d 1601, 1604-05 (Fed. Cir. 1993). Each individual claiming to be an inventor in a patent application must execute an oath or declaration that he is the original inventor of the claimed invention. 35 U.S.C. § 115.

35.    Through years of conceptualizing, trial and error, and reduction to practice, Valdez conceived of each and every novel component of the Invention. On the other hand, Bulboff did not contribute to the conception of any component of the Invention. Therefore Valdez, and not

Bulboff, is the rightful inventor of the Invention. Any declaration or oath made by Bulboff in connection with the Applications is a fraudulent misrepresentation of material fact.

36.    Bulboff never informed Valdez about his intention to file the Applications. Instead, Valdez learned of the Applications only after they had been filed, when Bulboff flippantly mentioned that he had filed a patent application for Valdez's Invention. Bulboff failed to inform Valdez that Bulboff listed himself as the sole inventor and did not name Valdez as an inventor. Bulboff also failed to inform Valdez of the material fact that Valdez, and not Bulboff, was legally entitled to be listed as an inventor in a patent application for the Invention.

37.    To date, Valdez is not and has never been named as an inventor on the Applications.

38.    To date, Valdez has derived no financial benefit from the Applications.

<strong>Bulboff Advertises the Invention as His Own</strong>

39.    In addition to filing the Applications and falsely listing himself as the sole inventor, Bulboff has proudly and publicly claimed Valdez's Invention as his own on several occasions. On or about October 2024, Bulboff installed a plate bearing the name Bulboff on the model of Valdez's Invention the pair would take to the NRCC. This plate was installed without Valdez's knowledge or permission.



40.     On or about October 2024, Bulboff posted a photograph of an email he received confirming the filing and assignment of the Applications on his personal social media account. The posts were made without Valdez's knowledge or permission.




41.     On or about January 5, 2025, Bulboff created a Facebook page entitled "MVi Oversized Wash Solutions" and stated, "After many years of design, testing and patent work, we are proud to say that we are officially in business."  The page boasts that MVi provides "the first automatic wash solution for vehicles up to 200,000 lbs.". The page also displays a logo featuring the name "Montage Vehicle Innovations", Valdez's common law trademark he created in 2024. The page also features photographs and videos Valdez took of his Invention in operation. The MVi Facebook page was created without Valdez's knowledge or permission. Valdez's Montage Vehicle Innovations trademark was and continues to be used without Valdez's knowledge or permission. Valdez's photographs and videos were and continue to be used without Valdez's knowledge or permission.



**Bulboff and Coleman Hanna Conspired to Usurp and Monetize Valdez's Invention**

42.     Coleman Hanna expressed interest in Valdez's Invention and often discussed the possibility of licensing, manufacturing, and selling Valdez's Invention. Early on, Bulboff included Valdez in these discussions. However, as Valdez's Invention gained more attention and it became apparent that the Invention would be incredibly lucrative, Bulboff and Coleman Hanna began excluding Valdez from their discussions. For example, Bulboff began instructing Valdez not to attend meetings with Coleman Hanna and refused to speak on the phone in front of Valdez.

43.     During one of their private meetings, Bulboff and Coleman Hanna entered into a series of agreements. Valdez was not a party to these agreements. These agreements were made without Valdez's knowledge or permission. On information and belief, Bulboff and Coleman

Hanna agreed to commercialize, manufacture, and sell the Invention without Valdez. Shortly thereafter, Bulboff installed a plate bearing the name "Hanna" on the trade show model of Valdez's Invention. This plate was installed without Valdez's knowledge or permission.

44.    On or about October 2024, Valdez and Bulboff attended NRCC as representatives of Coleman Hanna to showcase Valdez's Invention. During this convention, a Coleman Hanna executive invited Valdez to visit Coleman Hanna headquarters in Houston, Texas, and begin preparing for the next trade show scheduled for February 2025.

45.    Shortly thereafter, on or about October 2024, Valdez returned to Florida to continue working on his Invention. Upon arrival at Bulboff's Florida Super Wash, Valdez was met with unexpected hostility from one of Bulboff's associates. Bulboff's associate called the police claiming Valdez was trespassing at the carwash. Valdez was then barred from returning to the property. To date, Valdez has not been allowed to return to Bulboff's Florida Super Wash to retrieve his Invention. Bulboff subsequently expressed to Valdez that Bulboff is not concerned with Valdez's efforts to regain rightful possession of the Invention, reflecting Bulboff's reliance on his superior position to act unlawfully without consequence.

46.    Despite this setback, Valdez traveled to Houston to prepare for the upcoming trade show as planned. Upon arrival at Coleman Hanna headquarters, Valdez was once again met with unexpected hostility. After being held in the lobby for half an hour while Coleman Hanna executives discussed his arrival, Valdez was eventually allowed into a conference room. Though Valdez attempted to discuss trade show preparations, Coleman Hanna executives expressed uncertainty regarding Valdez's future involvement. After this visit, Coleman Hanna abruptly and without explanation cut off all communication with Valdez.

47.    Valdez was subsequently blocked from several popular carwash social media groups. On information and belief, Bulboff and Coleman Hanna made false and malicious misrepresentations to leaders in the carwash industry to tarnish Valdez's reputation in the industry and discredit any claims of inventorship.

**Valdez Files a Patent Application to Protect His Invention**

48.    On or about November 2024, Valdez filed a U.S. Provisional Patent Application No. 63/725,871 entitled Car wash conveyor system for oversized vehicles for his Invention, correctly listing the sole inventor as Zavian Valdez.

## V.    <u>CLAIMS</u>

**Count I – Unfair Competition and False Designation of Origin
under § 43 of the Lanham Act, 15 U.S.C. § 1125(a)
(Against Defendant Bulboff)**

49.    Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

50.    Bulboff's acts of passing off the Invention and Applications as intellectual property created solely by Bulboff constitutes unfair competition and false designation of origin in interstate and intrastate commerce. While Bulboff provided Valdez with valuable resources, Valdez alone conceived of each and every inventive concept of the Invention. Therefore, Valdez is the sole inventor of the Invention. Bulboff filed the Applications listing himself as the sole inventor. Bulboff also announced the filing of the Applications on his personal social media pages and created the MVi Facebook page claiming to launch the Invention after years of design, testing and patent work. Each of these acts was undertaken without Valdez's knowledge or consent.

51.    As a result of unfair competition and false designation of origin, Bulboff caused Valdez to suffer actual damages in an amount to be proven at trial. Bulboff has wrongfully taken Valdez's profits and the benefit of his creativity and investment of time, energy, and money, and

has similarly injured Valdez's reputation and standing in the relevant industry by claiming to have a status and position that he does not, thus confusing, deceiving, and/or misleading the relevant consuming public. Valdez has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Bulboff from any further acts of unfair competition. Bulboff's continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Valdez in that he will have no adequate remedy at law to compel Bulboff to cease such acts. Valdez is therefore entitled to a preliminary injunction and a permanent injunction against further unfairly competitive conduct by Bulboff and those in concert with Bulboff, including but not limited to, on information and belief, Coleman Hanna.

### Count II – Breach of Fiduciary Duty
### (Against Defendant Bulboff)

52.    Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

53.    Bulboff owed Valdez a fiduciary duty. The duty arose from Bulboff and Valdez's partnership and course of dealings over several years, Bulboff's representations and obligations, and the circumstances surrounding the parties' dealings.

54.    Bulboff recognized and accepted his fiduciary duties to Valdez by holding himself out to Valdez as a partner and by holding himself out to the public as Valdez's partner.

55.    As a fiduciary, Bulboff owed Valdez duties of loyalty, care, and candor. Bulboff knowingly breached his fiduciary duties to Valdez by (i) fraudulently inducing Valdez into disclosing his inventive concepts to Bulboff, (ii) secretly filing the Applications listing Bulboff as the sole inventor, (iii) advertising the Invention as his own, (iv) excluding Valdez from business conversations regarding the Invention, (v) making secret arrangements with other entities such as Coleman Hanna to manufacture, commercialize, and sell the Invention without Valdez, (vi)

preventing Valdez's physical possession of his Invention, and (vii) failing to reimburse Valdez for his contributions to Bulboff's business. All of these breaches occurred within the relevant statutes of limitation and were part of an overarching fraudulent scheme to misappropriate Valdez's Invention.

56.    As a direct and proximate result of Bulboff's actions, Valdez has sustained actual damages in an amount to be proven at trial.

57.    Bulboff has acted with the specific intent to profit from the abuse of his fiduciary duties and did so knowingly, unlawfully, and with malice. Valdez is therefore entitled to punitive damages. Bulboff also acted in bad faith, and Valdez is entitled to punitive damages and attorneys' fees.

### Count III – Fraud
### (Against Defendant Bulboff)

58.     Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

59.    Bulboff intentionally made material misrepresentations, misstatements, and omissions with the intention of leading Valdez to believe that Valdez and Bulboff would be business partners. Bulboff repeatedly represented to Valdez and the public that Bulboff and Valdez were partners in the commercialization of a new conveyor system.

60.    More specifically, Bulboff's representations fraudulently induced Valdez to disclose his ideas to Bulboff under the pretense of a partnership. Bulboff's representations also fraudulently induced Valdez to provide carwash equipment for the benefit of Bulboff's Florida Super Wash under the pretense of being reimbursed.

61.    Bulboff fraudulently failed to disclose that Bulboff was secretly applying for patents on technologies that Valdez invented, including ideas that Valdez had disclosed to Bulboff in

confidence. Bulboff fraudulently represented to the USPTO and other patent offices that Bulboff is the inventor of the subject matter contained in the Applications. Bulboff did not disclose to Valdez that the Applications, if issued as patents, would deny Valdez any ownership right to the Invention. Bulboff's failure to disclose this information was a material omission in furtherance of fraudulently inducing Valdez to disclose his ideas to Bulboff, fraudulently filing the Applications listing himself as the inventor, and fraudulently preventing Valdez from obtaining patent protection for Valdez's Invention.

62.    At the time Bulboff made such statements and omitted such information, Bulboff knew that his statements were false and that his omissions were misleading and intentional.

63.    Bulboff made such statements and omitted such information with the intent to induce Valdez to enter into the disclose his ideas and reduce them to practice in collaboration with Bulboff so that Bulboff could obtain Valdez's innovation solutions. Bulboff also made such statements with the intent to induce Valdez to make contributions to Bulboff's carwash so that Bulboff could obtain the benefit of the equipment without compensating Valdez.

64.    The prospects of patenting and monetizing the Invention were material to Valdez's decision to partner with Bulboff and disclose his inventive concepts to Bulboff. Bulboff's promises to reimburse Valdez were material to Valdez's decision to provide carwash equipment to Bulboff. Valdez would not have disclosed his inventive concepts or provided carwash equipment to Bulboff if Valdez had known the information that Bulboff failed to disclose. Valdez placed his trust and confidence in Bulboff as a long-term business partner based on the parties' partnership and representations made by Bulboff.

65.    As the direct and proximate result of Bulboff's fraud, Valdez has sustained actual damages in an amount to be proven at trial.

66.     The aforementioned acts were intentional, egregious, fraudulent, willful, malicious, deliberately oppressive, and part of a pattern of conduct directed at the public in general. Valdez is therefore entitled to punitive damages. Bulboff acted in bad faith and Valdez is entitled to attorneys' fees.

### Count IV – Conversion
### (Against Defendant Bulboff)

67.     Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

68.     Valdez is the legal owner of the Invention conceived of and developed by Valdez, and is entitled to possession of that property.

69.     Bulboff took control of Valdez's property and wrongfully exercised that control in a manner inconsistent with Valdez's ownership, and to the exclusion of Valdez's rights in the property, specifically by applying for U.S. and International patents claiming the Invention and barring Valdez from retrieving physical embodiments of the Invention.

70.     To date, Valdez is not and has never been named as an inventor in the Applications and has been deprived of the physical embodiments of the Invention located at Bulboff's Florida Super Wash.

71.     Bulboff converted Valdez's Invention without the knowledge and/or consent of Valdez.

72.     As the direct and proximate result of Bulboff's conversion, Valdez has sustained actual damages in an amount to be proven at trial.

## Count V– Common Law Trademark Infringement
### (Against Defendant Bulboff)

73.    Valdez incorporates herein by references to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

74.    Bulboff's use of Valdez's "Montage Vehicle Innovations" mark constitutes common law trademark infringement, at least because Bulboff's use of Valdez's trademarks and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or affiliation of the infringing products and services, at least by creating the false and misleading impression that the infringing products and services are manufactured by, authorized by, provided by, or otherwise associated with Valdez.

75.    Valdez's trademark is entitled to protection under common law. Valdez has continuously promoted and used his marks in the United States. Through that use, Valdez's marks have become well-known indicators of the origin of Valdez's product.

76.    Bulboff's use of Valdez's marks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Valdez for which Valdez has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Valdez's trademarks, products, and business.

77.    On information and belief, Bulboff's use of Valdez's trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Bulboff's bad faith is evidenced at least by Bulboff's unlawful use of Valdez's trademarks to sell the infringing product and service, and by Bulboff's continuing disregard for Valdez's rights.

78.    Valdez is entitled to injunctive relief, and Valdez is also entitled to recover at least Valdez's damages, Bulboff's profits, punitive damages, costs, and reasonable attorney's fees.

### Count VI – Civil Conspiracy
### (Against Defendants Bulboff and Coleman Hanna)

79.    Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

80.    On information and belief, Bulboff and Coleman Hanna are parties to an agreement to an unlawful act or a lawful act by unlawful means. Bulboff and Coleman Hanna's object was to commercialize, manufacture, and sell Valdez's Invention without Valdez. Bulboff and Coleman Hanna achieved their object by excluding Valdez from business meetings and agreements regarding the Invention, covertly filing the Applications intentionally excluding Valdez as the inventor, entering secret agreements to license, commercialize, manufacture and/or sell the Invention without Valdez, and making misrepresentations regarding Valdez's inventorship.

81.    Filing such Applications, executing such agreements, and making misrepresentations about Valdez, among other things, constitute unlawful, overt acts in furtherance of the conspiracy to commercialize, manufacture, and sell the Invention without Valdez. Bulboff and Coleman Hanna had the specific intent to commit these acts in furtherance of their conspiracy.

82.    Valdez has been damaged by Bulboff and Coleman Hanna as a result of the acts done under the conspiracy in an amount to be proven at trial. As such, Bulboff and Coleman Hanna are liable for the wrongful conduct for each member of the unlawful civil conspiracy as if it were their own.

### Count VII – Unjust Enrichment
### (Against Defendant Bulboff)

83.    Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

84.   Valdez conferred a benefit on Bulboff. More specifically, Valdez shared his innovative solutions with Bulboff and provided years of labor in reducing the Invention to practice. Valdez also procured carwash equipment for Bulboff's Florida Super Wash. In furnishing the benefits, Valdez was not acting as a volunteer. Instead, Valdez was acting as an equal partner when he shared his innovative ideas and technical skills with Bulboff. When Valdez procured carwash equipment, he was acting as a party to an agreement with Bulboff wherein Valdez would be reimbursed for his contributions.

85.   Bulboff has knowledge of the benefit that was conferred upon him without paying Valdez therefor. Bulboff illegally, wrongfully, knowingly, and without authority, took the products of Valdez's ideas and efforts and improperly filed the Applications listing himself as the sole inventor. Valdez was not listed as an inventor in the Applications. Valdez has not received any compensation for his ideas or efforts, and has not received any financial benefit from the Applications. Bulboff illegally, wrongfully, knowingly, and without authority, advertised Valdez's Invention as his own. On information and belief, Bulboff illegally, wrongfully, knowingly, and without authority entered into agreements to license, manufacture, distribute, and/or sell Valdez's Invention without Valdez. Valdez has not received any compensation from any sale, licensing, assignment, manufacturing, distribution, or use of his Invention by Bulboff. Bulboff illegally, wrongfully, knowingly, and without authority, took the physical embodiments of Valdez's Invention that Valdez built. Valdez has not received any compensation for the physical embodiments of the Invention, and has not received any financial benefit from the embodiments. Bulboff illegally, wrongfully, knowingly, and without authority, kept Valdez's carwash equipment as well as the proceeds thereof without compensating Valdez as agreed. Valdez has not received any compensation for the carwash equipment he procured.

86.    Bulboff voluntarily accepted and retained the benefit conferred. Further, Bulboff repeatedly encouraged Valdez to share his innovative ideas and assured Valdez that together they would achieve success. Bulboff took the products of Valdez's ideas and efforts, secretly filed the Applications listing himself as the sole inventor, advertised Valdez's Invention as his own, and kept Valdez's physical embodiments of the Invention. Bulboff also accepted the carwash equipment that Valdez purchased for Bulboff's carwash as well as the proceeds thereof. On information and belief, Bulboff entered into agreements to license, assign, manufacture, distribute, and/or sell Valdez's Invention without Valdez.

87.    Bulboff's retention of the benefit is inequitable unless Bulboff pays to the Valdez and ZZ Tech the value of the benefit, which is to be established at trial.

### Count VIII – Unjust Enrichment
### (Against Coleman Hanna)

88.    Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

89.    Valdez conferred a benefit on Coleman Hanna. More specifically, Valdez created the Invention and spent years reducing the Invention to practice. In furnishing the benefit, Valdez was not acting as a volunteer. Instead, Valdez was acting as an innovator in the carwash industry for his own benefit.

90.    Coleman Hanna has knowledge of the benefit that was conferred upon it without paying Valdez therefor. On information and belief, Coleman Hanna illegally, wrongfully, knowingly, and without authority entered into agreements to license, manufacture, distribute, and/or sell Valdez's Invention without Valdez. Valdez has not received any compensation from any sale, licensing, assignment, manufacturing, distribution, or use of his Invention by or to Coleman Hanna.

91.    Coleman Hanna voluntarily accepted and retained the benefit conferred. On information and belief, Coleman Hanna illegally, wrongfully, knowingly, and without authority entered into agreements to license, manufacture, distribute, and/or sell Valdez's Invention without Valdez.

92.    Coleman Hanna's retention of the benefit is inequitable unless Coleman Hanna pays to the Valdez and ZZ Tech the value of the benefit, which is to be established at trial.

**Count IX – Exceptional Case**
**(Against Defendants Bulboff and Coleman Hanna)**

93.    Valdez incorporates herein by reference to each and every allegation in the preceding paragraphs as if each allegation were set forth herein in its entirety.

94.    Bulboff has committed acts and will continue to commit acts that make this case exceptional under 35 U.S.C. § 285 and 15 U.S.C. § 1117.

95.    On information and belief, Coleman Hanna has committed acts and will continue to commit acts that make this case exceptional under 35 U.S.C. § 285.

VI.    **JURY DEMAND**

96.    Plaintiff hereby demands a jury trial.

VII.    **PRAYER FOR RELIEF**

For the reasons stated above, Plaintiffs Valdez and ZZ Tech, LLC pray that they may have judgment in its favor and against the Defendants Stephen Bulboff and Coleman Hanna as follows:

(a) A judgment in favor of Valdez and ZZ Tech that Bulboff has engaged in unfair and deceptive trade practices in violation of the Lanham Act, fraud, conversion, and common law trademark infringement, and has breached his fiduciary duty owed to Valdez, and that all of these wrongful activities by Bulboff were willful;

(b) A judgment in favor of Valdez and ZZ Tech requiring Bulboff to pay Valdez and ZZ Tech damages adequate to compensate for his unfair and deceptive trade practices, breach of fiduciary duty, fraud, conversion, and common law trademark infringements, in an amount reflecting Valdez's and ZZ Tech's lost profits, cost of corrective advertising, cost of corrective proceedings with the United States Patent and Trademark Office and other patent offices, reimbursement for carwash equipment, reputational damage, and the disgorgement of Bulboff's profits, with an accounting, as needed, and pre-judgment and post-judgment interest, fees, and costs;

(c) A preliminary injunction to prevent further unfair and deceptive trade practices, breaches of fiduciary duty, fraud, conversion, and common law trademark infringements by Bulboff and his officers, agents, servants, employees, attorneys and all others in active concert or participation;

(d) An order requiring Bulboff to remedy his unfair and deceptive trade practices, breach of fiduciary duty, fraud, conversion, and common law trademark infringement, including by:

    a. Publishing a corrective notice informing consumers of his earlier misrepresentations and providing proper attribution of Valdez's Invention and trademarks to Valdez, and to provide a copy of this notice to all customers, manufacturers, distributors, investors, and/or others to whom misrepresentations were made;

    b. Returning all prototypes, models, and embodiments of Valdez's Invention in his possession, custody, and control to Valdez's possession;

**COMPLAINT**                  Page **28** of 32

    c.  Destroying all plates, molds, and other means of making embodiments of or products derived from Valdez's Invention in his possession, custody, and control; and

    d.  Destroying all advertising materials related to Valdez's Invention in his possession, custody, and control, including on the Internet.

    e.  Filing a correction of inventorship and any other necessary papers with the United States Patent and Trademark Office and any other patent office in which Bulboff has filed an application for the Invention, and assign all rights in the applications to Valdez;

    f.  Assigning any license, manufacture, distribution, and/or sales agreement involving Valdez's Invention to Valdez;

(e)  A permanent injunction against further acts of unfair competition and deceptive trade, fraud, conversion, further breaches of fiduciary duty, and further infringement of Valdez's trademark by Bulboff and each of his agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert with any of them;

(f)  A judgement in favor of Valdez and ZZ Tech that damages and profits be trebled and awarded under 15 U.S.C. § 1117, as a result of Bulboff's willful violation of the Lanham Act;

(g)  A judgment in favor of Valdez and ZZ Tech that Bulboff and Coleman Hanna have engaged in a civil conspiracy and have been unjustly enriched;

(h)  A judgment in favor of Valdez and ZZ Tech requiring Bulboff and Coleman Hanna to pay Valdez and ZZ Tech damages adequate to compensate for their civil conspiracy and unjust enrichment in an amount reflecting Valdez's and ZZ Tech's lost profits, cost

of corrective advertising, cost of corrective proceedings with the United States Patent and Trademark Office and other patent offices, reimbursement for carwash equipment, reputational damage, and the disgorgement of Bulboff's and Coleman Hanna's profits, with an accounting, as needed, and pre-judgment and post-judgment interest, fees, and costs;

(i) A preliminary injunction to prevent further civil conspiracy by and unjust enrichment of Bulboff, Coleman Hanna, and their officers, agents, servants, employees, attorneys and all others in active concert or participation;

(j) An order directing Bulboff, Coleman Hanna, and their respective officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them to remedy their civil conspiracy and unjust enrichment, including by:

    a. Publishing a corrective notice informing consumers of his earlier misrepresentations and providing proper attribution of Valdez's Invention and trademarks to Valdez, and to provide a copy of this notice to all customers, manufacturers, distributors, investors, and/or others to whom misrepresentations were made;

    b. Returning all prototypes, models, and embodiments of Valdez's Invention in their possession, custody, and control to Valdez's possession;

    c. Destroying all plates, molds, and other means of making embodiments of or products derived from Valdez's Invention in their possession, custody, and control; and

    d. Destroying all advertising materials related to Valdez's Invention in their possession, custody, and control, including on the Internet.

(k) A permanent injunction enjoining Bulboff, Coleman Hanna, and their respective officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them from:

    a. Making any false or misleading statements regarding the inventorship or ownership of the Invention;

    b. Defaming, disparaging, or otherwise damaging the reputation and goodwill of Valdez or the Invention, whether through false statement, publications, or otherwise;

    c. Manufacturing, distributing, marketing, or selling any embodiments of or products derived from Valdez's Invention;

    d. Offering, promoting, or licensing the Invention for commercial use; and

    e. Committing any other unlawful business practice directed toward obtaining the business and customers of Valdez and ZZ Tech;

(l) A judgment in favor of Valdez that this case is exceptional under 35 U.S.C. § 285 awarding Valdez and ZZ Tech its reasonable costs and attorney's fees;

(m) Any such other and further relief as the Court may deem just, proper, and or necessary under the circumstances.

**COMPLAINT**                Page **31** of **32**

Dated: January 22, 2025

Respectfully submitted,

*/s /David W. Carstens*

**David W. Carstens**
Texas Bar No. 03906900
**Theodore G. Baroody**
Texas Bar No. 01797550
**Sharon N. Hise**
Texas Bar No. 24132414
**CARSTENS, ALLEN & GOURLEY, LLP**
7500 Dallas Pkwy, Suite 300
Plano, Texas 75024
(972) 367-2001
(972) 367-2002 Fax
carstens@caglaw.com
tbaroody@caglaw.com
hise@caglaw.com

**Counsel for Plaintiffs**